UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BONNIE MATTHEWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV1097 JAR |
| ) | |
| BANK OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (ECF No. 28). This matter has been fully briefed and is ready for disposition.

## **BACKGROUND**

Plaintiff Bonnie Matthews ("Plaintiff") began working for Defendant Bank of America ("Defendant") in November 2000 as a teller. (Statement of Uncontroverted Material Facts ("SUMF"), ECF No. 30, ¶1).[1] Starting on or around April 9, 2008, Plaintiff began missing work due to teeth problems. (Id., ¶9). On April 11, 2008, Plaintiff went to Grace Hill Community Health Center; Plaintiff was diagnosed with abscessed teeth and was told she needed teeth extracted. (Id., ¶10). Plaintiff was absent from work on April 21, 2008 through April 25, 2008, and again on May 15, 2008 and May 16, 2008. (Id., ¶16).

During the third week in May, Matthews met with her supervisors about her absences. (Id., ¶18). After this meeting, Matthews talked to her supervisor, Tammy Spruill, about applying for leave under the Family Medical Leave Act ("FMLA") because of her teeth problems. (Id., ¶19). Spruill and Plaintiff called MetLife, the administrator of Defendant's FMLA and short-term

---

[1]Plaintiff did not respond Defendant's Statement of Uncontroverted Material Facts (ECF No. 30) and, therefore, Defendant's Statement of Uncontroverted Material Facts is deemed admitted. See E.D.Mo. L.R. 4.01(E).

disability ("STD") programs, about Plaintiff applying for FMLA leave. (Id., ¶19). On or around May 28, 2008, Plaintiff opened a FMLA claim with MetLife for intermittent leave for her doctor and dentist appointments in April and May 2008 and thereafter. (Id., ¶20). That same day, MetLife sent Matthews a letter notifying her that it had received her request for a leave of absence and that she needed to provide a health care provider certification by the beginning of the absence or within twenty calendar days from the date of the letter, i.e., June 17, 2008. (Id., ¶23). Plaintiff claims that she submitted the health care certification forms to her doctor, but she did not know if he sent those forms to MetLife. (Id., ¶24).

Plaintiff went to treatment on May 31, 2008, and did not return to work until June 9, 2008. (Id., ¶25). On June 4, 2008, Plaintiff applied for STD through MetLife. (Id., ¶26). Also on June 4, 2008, MetLife wrote Plaintiff a letter acknowledging her STD request and informing her that it would contact her healthcare provider to obtain specific medical information before approving her application. (Id., ¶27). On June 5, 2008, MetLife informed Plaintiff that it was unsuccessful in contacting her healthcare provider. (Id., ¶28). MetLife asked Plaintiff to arrange for her healthcare provider to complete an "Attending Physician Statement" and provide an expected to return to work date. (Id.).

On June 5, 2008, Matthews opened a second FMLA claim with MetLife. (Id., ¶29). Plaintiff requested a block of time off, beginning May 31, 2008. (Id.). Plaintiff understood that this request was separate from her first FMLA request for intermittent leave and that she would need to provide adequate medical information for her claim to be approved. (Id.).

On June 5, 2008, MetLife received notes regarding treatment of Plaintiff by Dr. Rohan and her healthcare providers at Grace Hill. (Id., ¶30). The FMLA "Certification of a Health Care Provider" and the STD "Attending Physician Statement" were not included. (Id.).

Plaintiff was absent from June 10, 2008 through June 29, 2008. (Id., ¶31). On June 18, 2008, MetLife notified Plaintiff that her first FMLA claim for intermittent leave and her STD claim were both denied because Plaintiff did not provide the required medical information. (Id., ¶32). MetLife told Plaintiff it would reopen her claim if it received the proper medical information. (Id., ¶33). On June 23, 2008, MetLife told Plaintiff that her second FMLA claim was denied because she did not provide the required medical information. (Id., ¶34). Plaintiff understood that her FMLA claims and her STD claim were denied because she did not provide the requested medical information. (Id., ¶35).

Plaintiff's teeth were extracted on June 26, 2008. (Id., ¶36). Plaintiff returned to work on June 30, 2008, and her teeth problem was resolved. (Id., ¶37). Likewise, Plaintiff's other symptoms, high blood pressure, blurred vision, anxiety and nervousness, subsided after her teeth extraction. (Id., ¶38). Plaintiff understood her teeth problem to be a short-term condition. (Id., ¶39). On June 30, 2008, Spruill gave Plaintiff a letter regarding her insufficient medical documentation for her leave of absence and provided her with another opportunity to submit the correct documentation. (Id., ¶40). Plaintiff was informed that if she did not provide the additional medical document by July 2, 2008, then her employment would be terminated effective July 11, 2008. (Id., ¶42; BOA/Matthews00478).

On July 2, 2008, Plaintiff faxed MetLife her signed Authorization for the Release of Protected Health Information, the June 30, 2008 letter from Spruill, the completed Attending Physician Statement, and a June 30, 2008 letter from Grace Hill. (Id., ¶43). Dr. Rohan had completed the Attending Physician Statement. (Id., ¶44). In response to the question, "have you advised patient to return to work," Dr. Rohan stated, "never was asked to not go to work." (Id., ¶45). At her deposition, Plaintiff admitted that she decided to be absent from work because she felt she could not perform her job because of her tooth pain. (Id., ¶46). In addition, the letter from

Grace Hill listed only seven dates that Plaintiff had medical appointments in May and June 2008. (Id., ¶47).[2] The letter also stated that it was "not a return to work statement." (Id.). Other than the faxes sent to MetLife on June 5, 2008, July 2, 2008 and July 3, 2008, Plaintiff provided no other medical information to MetLife to support her FMLA and STD benefit claims. (Id., ¶49). In June and July 2008, MetLife advisors explained to Plaintiff on multiple occasions that she needed to submit information that was not contained in the faxes before they could assess her claims. (Id., ¶50). Plaintiff admitted that MetLife had informed her that she had missing medical information. (Id., ¶51).

Defendant again extended the deadline for Plaintiff to submit additional medical documentation from July 10, 2008 until July 21, 2008. (Id., ¶53). Plaintiff failed to provide the medical documentation by July 21, 2008. (Id., ¶54). Defendant terminated Plaintiff's employment effective July 21, 2008 because she failed to provide the requested medical documentation to support her leave of absence from May 31, 2008 through June 29, 2008. (Id., ¶55).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

---

[2] Plaintiff re-faxed this letter on July 3, 2008. (Id., ¶48).

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258. "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) (citing Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## DISCUSSION

## I. PLAINTIFF'S FAILURE TO PROVIDE MAILING ADDRESS

As an initial matter, the Court finds that this lawsuit could be dismissed because Plaintiff has failed to update her address with the Court. On November 7, 2011, the Court sent Plaintiff an order vacating the trial date. (ECF No. 33). On November 14, 2011, the Court's correspondence to Plaintiff was returned to the Court as undeliverable and unable to forward. (ECF No. 34). The Court could not verify another address for Plaintiff. (Id.). Plaintiff has not provided the Court with a change of address.

Pursuant to E.D.Mo. L.R. 2.06(B), a pro se party must "promptly notify the Clerk and all other parties to the proceedings of any change in his or her address and telephone number." Further, if any mail to a pro se plaintiff is returned to the Court without a forwarding address and the pro se plaintiff does not notify the Court of the change of address within thirty (30) days, the Court may,

without further notice, dismiss the action without prejudice. E.D.Mo. L.R. 2.06(B). However, given the length of time the case has been pending and the status of the case, the Court will consider Plaintiff's action based upon the fully-briefed motion for summary judgment.

## II. MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that Defendant failed to accommodate her disability and that she was terminated in violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, *et seq*. (Complaint ("Compl."), ECF No. 1, pp. 1-5). Plaintiff alleges that she "became ill" in April 2008 and requested temporary leave under the FMLA. (Id., p. 5). Plaintiff claims that even though she followed Defendant's policies and provided documentation from her physician, she was terminated. (Id., p. 6).

Defendant asserts that Plaintiff was terminated due to her unexcused absences. (Memorandum in Support of Defendant's Motion for Summary Judgment ("Memorandum"), ECF No. 29, p. 1). Defendant claims that it provided Plaintiff with an opportunity to utilize STD and FMLA leave, but Plaintiff failed to provide medical documentation to establish that she qualified for such programs. (Id.). Consequently, Defendant states it terminated her after she failed to provide such documentation for several months. (Id.).

Under the ADA, employers are barred from discriminating "against a qualified individual because of the disability of such individual." 42 U.S.C. § 12112(a).[3] "To establish a prima facie case under the ADA, Plaintiff must demonstrate (1) her condition qualifies as a disability within the meaning of the ADA, (2) she is qualified to perform the essential functions of her position with or

---

[3]As noted by Defendant, the allegations in Plaintiff's Complaint occurred in 2008, and, therefore, the ADA Amendments Act of 2009 and the March 2011 EEOC regulations implementing those amendments do not apply in this case. (Memorandum, p. 3; Nyrop v. Independent School Dist. No. 11, No. 09-2083/2084, 2010 U.S. App. LEXIS 16114, at *12 (8th Cir. Aug. 4, 2010)(noting that Congress did not provide for retroactive application in the amendments).

without a reasonable accommodation, and (3) she has suffered an adverse employment action due to her disability." Samuels v. Kan. City Mo. Sch. Dist., 437 F.3d 797, 801 (8th Cir. 2006)(citing Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 850 (8th Cir. 2002)); see also Rask v. Fresenius Med. Care N. Am., 509 F.3d 466, 469 (8th Cir. 2007)(citing Dropinski v. Douglas County, Neb., 298 F.3d 704, 706-07 (8th Cir. 2002)). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A); Samuels, 437 F.3d at 801.

### A. Plaintiff Fails to Make a Prima Facie Case

First, Defendant asserts that Plaintiff's claim fails as a matter of law because she alleges only a temporary impairment and, therefore, cannot state a claim for disability discrimination. "[T]emporary impairments with little or no long-term impact are not disabilities." Samuels, 437 F.3d at 802 (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii)). The impact of the impairment must be permanent or long term. Samuels, 437 F.3d at 802 (temporary restrictions on repetitive use of upper extremities does not constitute a disability); Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002).

Here, Plaintiff's alleged disability were abscessed teeth. Plaintiff's tooth problems began in April 2008 and ended on June 30, 2008, when her teeth were extracted. (SUMF, ¶¶9, 27). All of her side effects went away after the teeth were removed. (Id., ¶¶11, 38). Plaintiff admitted that her tooth problem was a short-term condition. (Id., ¶39). Plaintiff agreed that once her teeth were removed, then the impairment was resolved. (Id., ¶¶36-37). Thus, the undisputed evidence before the Court is that Plaintiff's alleged disability was temporary and, therefore, not covered under the ADA.

Second, Defendant claims that Plaintiff cannot establish that she was qualified to perform the essential functions of her position with or without reasonable accommodation because of her

excessive absenteeism. (Memorandum, p. 5). Under the ADA, a qualified individual is an individual who with or without reasonable accommodation can perform the essential functions of her job. 42 U.S.C. § 12111(8); Rask, 509 F.3d at 469. The Eighth Circuit has "'consistently held that regular and reliable attendance is a necessary element of most jobs[.]'" Rask, 509 F.3d at 469 (quoting Pickens v. Soo Line R.R. Co., 264 F.3d 773, 777 (8th Cir. 2001) (internal quotation marks and citations omitted), cert. denied, 535 U.S. 1057, 122 S. Ct. 1917, 152 L. Ed. 2d 826 (2002)); Darby v. Bratch, 287 F.3d 673, 682 (8th Cir. 2002) (presence at plaintiff's job was "no doubt essential" and, therefore, plaintiff was not qualified to perform the essential functions of her job); Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1048 (8th Cir. 1999) ("it is axiomatic that in order for [plaintiff] to show that she could perform the essential functions of her job, she must show that she is at least able to show up for work").

Here, Plaintiff conceded that being present at work was essential for her to perform the essential functions of her job. As a bank cashier, Plaintiff had to be present at work to greet customers, cash checks and sell bank products. (SUMF, ¶4). Likewise, if Plaintiff failed to show up for her assigned shift, then her absence would impact negatively Defendant's customer service. (Id., ¶5). The Court agrees that Plaintiff's absenteeism made her unable to perform the essential functions of her job, with or without a reasonable accommodation. Plaintiff missed a week of work in April, three days of work in May and nearly the entire month of June. (Memorandum, p. 6; SUMF, ¶¶9, 16, 25). Accordingly, due to her absences, the Court holds that Plaintiff was not a qualified individual for the position of a bank teller as a matter of law.

Third, the Court assumes that Plaintiff's allegation is that Defendant did not provide a reasonable accommodation for her disability, i.e., the Court interprets Plaintiff's FMLA leave request as a request for accommodation under the ADA. Defendant asserts that Plaintiff's claim

fails because she did not comply with Defendant's request for documentation. (Memorandum, pp. 6-9).

After a plaintiff requests an accommodation, the employer and employee are required to engage in an interactive process to determine what is a reasonable accommodation. Burchett v. Target Corp., 340 F.3d 510, 517 (8th Cir. 2003)(if an employee needs an accommodation, the employer must engage in an interactive process). This process is informal and flexible, enabling both employer and employee to identify the employee's limitations and accommodations. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1045 (8th Cir. 2005)(citing 29 C.F.R. § 1630.2(o)(3)).

Here, the breakdown in the interactive process occurred when Plaintiff failed to provide her medical documentation to support her request for leave. See Gerdes v. Swift-Eckrich, Inc., 949 F. Supp. 1386, 1406 (N.D. Iowa 1996)(quoting Beck v. Wisconsin Bd. of Regents, 75 F.3d 1130, 1136 (7th Cir. 1996)("Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process."). Accordingly, the Court finds that Defendant is not liable for failing to accommodate Plaintiff's alleged disability because Plaintiff never provided the documentation necessary to prove her disability or to demonstrate the need for an accommodation. See Steffes v. Stepan Co., 144 F.3d 1070, 1073 (7th Cir. 1998) (when the employee fails "to hold up her end of the interactive process by clarifying the extent of her medical restrictions, [the employer] cannot be held liable for failing to provide reasonable accommodations"); Templeton v. Neodata Servs., 162 F.3d 617, 619 (10th Cir. 1998)("[T]he employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation. An employer cannot be expected to propose reasonable accommodation absent critical information on the employee's medical condition and the limitations it imposes.").

In response to Defendant's Motion, Plaintiff does not address Defendant's first two arguments. She only states that Dr. Rohan "should be held accountable" for not completing Plaintiff's FMLA forms. (Plaintiff's Response to the Motion for Summary Judgment ("Response"), ECF No. 31, p. 2). Defendant, however, is not responsible for a breakdown in communication with Plaintiff's doctor. See Vawser v. Fred Meyer, Inc., 19 Fed. Appx. 722, 724 (9th Cir. 2001). Further, Plaintiff provides no evidence that she was an individual with a disability within the meaning of the ADA or that she was qualified to perform the essential functions of her position with or without reasonable accommodation. Moreover, Plaintiff does not demonstrate that she was eligible for FMLA leave or that she submitted the proper documentation to Defendant. In summary, Plaintiff does not demonstrate any issues of fact to oppose Defendant's Motion for Summary Judgment. The Court grants Defendant's Motion for Summary Judgment because Plaintiff cannot establish a prima facie case of disability discrimination.

### B. Defendant Provided a Legitimate Non-Discriminatory Reason

Even if Plaintiff had been able to establish a prima facie case, her claim fails because Defendant provided a legitimate, non-discriminatory reason for terminating Plaintiff's employment.[4] Defendant's Associate Handbook includes a provision titled "Absences in general," which states that employees may have to provide medical evidence regarding a leave of absence. (SUMF, ¶7). The Associate Handbook affords Defendant with the discretion to determine whether such medical evidence is acceptable and warns employees that failure to provide acceptable medical evidence could result in termination of employment. (Id.).

---

[4]The Court addresses this argument only briefly because, as discussed above, Plaintiff is not able to present a prima facie case of disability discrimination.

Plaintiff failed to provide the requested medical evidence to support her absence from employment. (SUMF, ¶¶52-54). Plaintiff was repeatedly warned that her failure to provide such evidence would result in her termination. Plaintiff's failure to provide medical evidence to support her absences from employment violated Defendant's policy regarding absences. Thus, the undisputed evidence indicates that Plaintiff was terminated for failure to comply with Defendant's policy, which is a legitimate, non-discriminatory reason for terminating her employment. Putman v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003)(violation of company policy is a legitimate reasons for termination).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 28) is **GRANTED**.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 29th day of December, 2011.

                                                  /s/ John A. Ross
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE